By the Court,

Nelson, Ch. J.
There are but two questions involved in this case material to the disposition of it, viz. 1. Whether the act of 1805 was effectual to enable the trustee to sell the premises without restriction as to price; and 3. Whether such conveyance could be made after the death of Welch, the cestui que trust.
It is insisted that the act of 1805 is unconstitutional; but to this I am unable to agree. The grant under the act of 1802 was a bounty from the state, to which it had a right to annex such restrictions and conditions as the legislature saw fit. Accordingly, the exclusive power of sale was conferred upon the trustee, fixing the minimum price per acre. So far, the grant was a qualified one. Neither the trustee, nor the cestui que trust, nor both together, could have aliened without observing the restriction thus imposed. The subsequent act of 1805 simply removed this limitation, and conferred upon the trustee full power of disposition. Instead of'interfering prejudicially with any vested interest or estate which Welch acquired in the premises under the former act, it confirmed and enlarged that already granted, by turning a qualified power of alienation into an absolute one. It was a new and additional gift to the one already made by virtue of the act of 1802; or, in other words, a release by the donor to the donee, of a condition annexed to a previous grant.
*494 The power of sale conferred upon the trustee was not necessarily limited to the lifetime of the cestui que trust, though the act of 1802 contemplated that a sale might or would be made within that period. It provided unqualifiedly, that Talmadge should dispose of the lot for a price not less than $2,50 per acre, apply the proceeds to the support of Welch and his family, and after his decease pay the residue, if any, to his legal representatives. The latter clause was intended merely as a direction for the disposition of the proceeds after the death of Welch, ■ but in no respect conflicts with or limits the power to sell, which is broadly given. It is entirely consistent with a continuance of that power after this period, if not before executed. We held, when this case was' formerly before us, (21 Wend. 147,) it then appearing that the trust had not been executed, that after the death of Welch, inasmuch as the estate was intended exclusively for his benefit and belonged to his legal representatives, it became a mere nominal trust which was executed in the cestui que trust under the 47th section of 1 R. R. 722, 2d ed. But as the trust now appears to have been carried into effect in 1808 by the trustee, this statute has nothing to do with it. We remarked there, that “no sale was contemplated after the death of John Welch.” It would have been more accurate, perhaps, if we had said, the act contemplated that a sale would take place before his death. The provision as to the proceeds after his death, rather looked to a sale in any event by the trustee. Besides, the grant to Talmadge was in trust for Welch his heirs and assigns, for the support of himself and his family ; and therefore, in terms, extends beyond the period of the lifetime of the former. This being coupled with a general power of sale, there can be no doubt, I think, that the deed to Nicholson, after the death of Welch, was a valid execution of the trust.
As to the position that the grant became void on account of the failure to perform the condition subsequent, viz : to make the settlement within seven years—if admitted, it would only show that neither the plaintiff nor defendant *495 had any title to the lot, and that it might become re-invested in the state. But the state must take advantage of this forfeiture, if any one, according to the well settled rule of law. (1 Shep. Touch. Preston's ed. 278 et seq.) It is said, however, that the condition was carried into the deed to Nicholson, and that the heir of the cestui que trust may enter and avoid it for the breach. There are two answers, I think, to this view. The deed to Nicholson recited the act of 1802; and the patent in pursuance thereof, and conveyed the premises, in effect, subject to the condition,contained in the previous grant from the state; leaving, therefore, the question arising out of it, between the state and grantee. This, it appears to me, is the fair import and legal effect of the clause, when taken in connection with the other parts of the conveyance. And, even assuming that the trust were a nominal one in the event of no sale by the trustee, so as to become executed in the cestui que trust in 1830, under 1 R. S. 722, § 47, 2d ed.; yet, as the trustee did in fact convey, until he or his heirs enter for breach of the condition subsequent and become thereby re-invested with the estate, the section cannot operate. Till then, the estate remains in the grantee, and-only a right of action exists in the heirs of Talmadge, who are the parties entitled to enter; (1 Shep. Touch. 285, Preston's ed.;) unless we hold that the 47th section of the statute above referred to, has the effect to transfer this to the cestui que trust, which I think cannot be maintained.
New trial granted.